UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAXWELL VERKUILEN,

    Plaintiff,

  v.                                            Case No. 14-C-400

BUSINESS INFORMATION GROUP, INC., et al.,

    Defendants.

## DECISION AND ORDER

Defendant Business Information Group, Inc. ("BIG") has moved for partial summary judgment under this court's "fast track" procedure. In its motion, it asserts that the claims alleged in the Plaintiff's complaint are barred by the applicable two-year statute of limitations. For the reasons given below, the motion will be granted.

BIG is engaged in the business of assembling and providing consumer reports, which businesses use in evaluating potential hires. According to the complaint, Plaintiff applied to be an agent at a number of insurance companies, many or all of which relied partly on a background report provided by BIG. Some of the information on Plaintiff's report was inaccurate. Specifically, the complaint alleges that the report included criminal charges that had been dismissed, as well as arrest records older than seven years. As a result of this information being on his report, Plaintiff alleges he failed to obtain employment.

The complaint alleges that the Defendants failed to comply with their obligations under the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), by failing to follow reasonable procedures to

assure accuracy, and by violating 15 U.S.C. § 1681k by failing to provide notice to the Plaintiff that it was reporting information about him to third parties. The complaint also alleges BIG failed to comply with its obligations under 15 U.S.C. § 1681i by negligently reinvestigating or correcting the information after Plaintiff disputed it. Finally, Plaintiff alleges BIG failed to timely provide him an adequate Notice of Results of Reinvestigation, as required by 15 U.S.C. § 1681i(a)(6).

BIG argues that most of these claims are time-barred because this lawsuit was not filed until April 7, 2014, long after the violations were discovered. The FCRA contains a two-year statute of limitations, which begins running on "the date of discovery by the plaintiff of the violation that is the basis of such liability." 15 U.S.C. § 1681p. BIG notes that the Plaintiff himself emailed BIG on two occasions, in August and September 2011, to dispute his background reports, and the emails indicate that he possessed copies of those reports as well. Because he delayed filing this lawsuit until April 7, 2014, BIG argues, any claims based on the 2011 reports must be time-barred. Similarly, any claims based on how BIG handled his disputes in 2011 are also barred. I will address the statute of limitations defense with respect to each of Plaintiff's claims.

**2. Section 1681e(b) Reporting Procedures**

The complaint alleges that BIG failed to follow reasonable procedures to assure accuracy of the information it was reporting. Section 1681e(b) provides that "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The Plaintiff concedes that he discovered inaccuracies in his report in 2011 and emailed the Defendant about them. Even so, he argues that BIG must demonstrate that Plaintiff discovered the legal basis for a statutory *violation*—not just an inaccuracy. The FCRA is

2

not a strict liability regime, and so it is not a violation just because a reporting agency reports something erroneous; a plaintiff must also demonstrate, for example, that BIG used "unreasonable" procedures when ensuring its reports' accuracy. 15 U.S.C. § 1681e(b). Thus, in Plaintiff's view, the limitations clock did not begin until he discovered both a reporting error *and* grounds suggestive of unreasonable procedures, and that did not occur until 2013, when he received information about his offense and arrest report from Outagamie County.

Although it is true that the statute of limitations is triggered by discovery of the claim, the Plaintiff takes the concept of "discovery" too far. After all, almost no consumers would ever have information about the reasonableness of a reporting company's own internal procedures until long after a lawsuit was filed. If the Plaintiff were correct, the two-year limitations period would be almost meaningless because the claim would seldom accrue until after the lawsuit was even filed. "Litigants rarely have all the evidence necessary to prove their claim when they file a lawsuit but they must file the lawsuit anyway based on less-than-perfectly confirmed allegations or risk waiving their right to do so." *Stroud v. Bank of Am.,* 886 F. Supp. 2d 1308, 1321 (S.D. Fla. 2012) (dismissing § 1681i claim on statute of limitations grounds).

Plaintiff relies on *Andrews v. Equifax,* where the district court appeared to agree with Plaintiff's position, noting that "Equifax does not explain how, from the information it sent, Plaintiff could discern whether the company's procedures in ensuring accuracy or reinvestigating her dispute were reasonable, indicating a violation of §§ 1681e(b) or 1681i(b)." *Andrews v. Equifax Info. Servs. LLC,* 700 F. Supp. 2d 1276, 1279 (W.D. Wash. 2010). The court found that the FCRA was not a strict liability statute, and thus opined that a Plaintiff might need to uncover more than just an error before discovering the basis of an FCRA claim. *Id.* The court also noted, however,

3

"[m]ore importantly, Equifax did not adequately support its assertion that Plaintiff received its reports, and thereby 'discovered' the alleged violations." *Id.* Thus, in *Andrews* (unlike this case) there was not even evidence that the plaintiff had received the erroneous reports. Accordingly, the court's observation about the reasonableness of the agency's practices was *dicta*.

Even if a plaintiff did need to discover the unreasonableness of the agency's procedures for ensuring accuracy, 15 U.S.C. § 1681e(b), that occurred here. When a plaintiff alerts the agency, twice, to a relatively simple error (the reporting of a dismissed criminal case), and the company fails to correct it, such a plaintiff will have, *ipso facto,* reasonable grounds to allege that agency's procedures are unreasonable. Bringing such a claim does not require discovery or in-depth knowledge about an agency's internal procedures, but merely a reasonable factual basis—enough information to bring a claim—and that factual basis is supplied here by the Plaintiff's own interactions with the reporting agency. Accordingly, I find that the 1681e(b) claim is untimely because it accrued more than two years prior to the filing of this lawsuit. *Grigoryan v. Experian Info. Sols., Inc.,* 84 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014) ("The claims arose, at the latest, on July 22, 2010, when Grigoryan admits he discovered the violations by requesting and reviewing the credit reports.")

**3. Section 1681i – Investigation and Reinvestigation**

The complaint also alleges that BIG failed to timely perform its investigation and reinvestigation duties, and it also failed to provide Plaintiff with a Notice of Results of Reinvestigation. Section 1681i(a)(1)(A) provides:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the

4

> agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

Since the agency has 30 days to investigate a dispute, the consumer would know within 30 days whether the agency has done so. If the agency finds the dispute meritless, it must send a notice to the consumer within 5 business days. Thus, BIG argues, the Plaintiff would have known in September 2011—soon after he emailed BIG—both that the agency's reinvestigation was complete and that it had not sent him any notice. There were no other facts to discover, and so the claim accrued at that time.

Plaintiff relies largely on *Drew v. Equifax Information Svcs.,* where the issue was whether the plaintiff's claim accrued before June 2004. 690 F.3d 1100, 1109 (9th Cir. 2012). There, the defendant argued that it accrued earlier than that date because the plaintiff had received collection calls in April and May of that year on the account that he disputed. These calls, the defendant argued, would have made the plaintiff aware that its investigation had been completed and that it believed the debt was legitimate. The court disagreed, however, noting that even though the defendant was making collection calls, it never informed the plaintiff that its investigation was complete. To start the clock running, the defendant had to show not just that the debt was erroneous, but that the defendant "had failed to comply with its duties under the FCRA, in particular, its duty to investigate." *Id.* at 1010. The simple act of trying to collect a debt was not enough to put the plaintiff on notice that the defendant's investigation was complete. In fact, the plaintiff was told in May 2004 that the challenged debt could not be removed from his account until

5

the investigation was over, which suggested the investigation was still ongoing. Under those circumstances, the court reasonably concluded that a claim based on an unreasonable investigation had not yet accrued by June 2004.

*Drew* is not on point, however, both because of the facts described above, as well as the fact that it involved a claim under § 1681s-2(b) against a furnisher of information. As BIG points out, in such claims the consumer is largely out of the loop because the furnisher's obligation to investigate is triggered not by the consumer but by a notification from the reporting agency. Thus, without being told so explicitly, a consumer would have no reason to question (either way) the reasonableness of a furnisher's investigation, and neither would the consumer be expected to know if the investigation were complete. By contrast, in this case—a § 1681i case—the Plaintiff himself was the one who initiated the dispute process directly with BIG. In August and September 2011 Plaintiff was emailing BIG about the matters he contested, and the statutory time period for BIG to conduct its investigation would have run out thirty days later. At that moment, the claim accrued and the limitations period began running. Plaintiff did not file the lawsuit until two and one-half years later. Accordingly, any claims based on reports issued by BIG prior to April 7, 2012 will also be dismissed.

**4. Report Required by 15 U.S.C. § 1681k**

Finally, the complaint also alleges that BIG failed to follow § 1681k, which requires it to "notify the consumer of the fact that public record information is being reported by the consumer reporting agency" if the information is "likely to have an adverse effect upon a consumer's ability to obtain employment." 15 U.S.C. § 1681k(a).

Once again, however, Plaintiff knew of the adverse reports in August and September 2011,

and thus he also knew that he had not received notice of those reports from the Defendant (although his email indicates he received the report from one of BIG's customers). At that point, the Plaintiff had all the facts required to bring a claim under this section, yet he waited until April 2014—more than two years later— to do so. Thus, any § 1681k claims are also dismissed to the extent they are based on reports not sent to him prior to April 7, 2012.

**5. February 2012 Report for Aviva USA**

In addition to the reports described above, which BIG provided in 2011, it also provided background reports to Aviva USA, another insurance company. On March 1, 2012, Aviva told the Plaintiff his application as an agent had been denied based on his background check. BIG argues that any claim based on this incident is also time barred, because the Plaintiff knew he'd been denied a job more than two year prior to filing suit.

The Plaintiff argues that he did not receive the report that gave rise to the denial of employment until May—two months later—when he wrote to Aviva and requested the report. (ECF No. 70, Ex. 2.) That means he was unaware of any errors in the report until May 2012, which is within the two-year limitations period by one month.

The record as it stands does not allow summary judgment on this point. BIG argues that the Plaintiff "inexplicably" delayed two moths in asking for the report from Aviva (ECF No. 70 at 10), but that delay is only inexplicable if we impute to the Plaintiff, in 2012, the knowledge that he would not file this lawsuit until April 2014. At the time, a two-month delay in asking for the report would not have seemed relevant. In any event, what's more important is that there is no evidence in the record suggesting that the Plaintiff knew Aviva had denied him due to an error in the BIG report it had used—unlike the other denials in 2011, when the Plaintiff possessed the reports in

7

question and was actively interacting with BIG. Accordingly, summary judgment will be denied as to any claims based on Aviva's use of BIG's reports.

**6. Equitable Tolling**

Finally, the Plaintiff asks that the statute of limitations period be tolled during the time he was exercising due diligence in attempting to find the source of the error underlying BIG's reports. As set forth above, however, the Plaintiff had all the information he needed to file a lawsuit in 2011, at least with respect to the claims described above. Even if equitable tolling could apply, any "diligence" he undertook after that point does not change the fact that the claim had already accrued, and that any additional information he learned would not have been necessary for filing a claim.

**7. Motion to Seal**

The Defendant filed a motion to seal all of the exhibits attached to its motion as well as those attached to the declaration of Timothy Gaudreau. (ECF No. 71.) Although some of the information contained therein is arguably personal and / or confidential information, most of it is not. The motion will therefore be **DENIED**. Either party wishing to seal documents may renew the motion if it can identify specific information it wishes to redact (rather than entire exhibits). Such party should file a redacted copy of any exhibit in which it wishes to seal information along with its motion.

For the reasons given above, the motion for partial summary judgment is **GRANTED** in part and **DENIED** in part. The motion to seal is **DENIED**. The clerk will set the case on the calendar for a telephonic scheduling conference.

**SO ORDERED** this 26th day of April, 2016.

                                                    /s William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court

9

Case 1:14-cv-00400-WCG    Filed 04/26/16    Page 9 of 9    Document 78